EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 918-316-6390, THAT IS STORED AT PREMISES CONTROLLED BY Cellco Partnership DBA Verizon Wireless | Case No.  21-MJ-335-KEW |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA**:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18 United States Code, Sections 1111, 81, 1151, 1153, 922(g)(1), and Title 26 United States Code, Section 5861(d), and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Lucas Keck*
_____
Lucas Keck
Special Agent
ATF

Sworn to before me and signed in my presence.

Date: 8/12/2021

*Kimberly E West*
_____
*Judge's signature*
Kimberly E. West
UNITED STATES MAGISTRATE JUDGE

City and state:  Muskogee, Oklahoma

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lucas Keck, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 918-316-6390 ("the SUBJECT PHONE"), that is stored at premises controlled by Cellco Partnership DBA Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Cellco Partnership DBA Verizon Wireless to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am currently assigned to the ATF Tulsa Field Office in the Northern Judicial District of Oklahoma, currently assigned to duties in the Northern District of Oklahoma and the Eastern District of Oklahoma. I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. I have been employed by ATF since 2015, and prior to my employment with ATF I was a Special Agent with the United States Secret Service (USSS) from 2009 through 2015.

3. During my employment with the USSS, I conducted and participated in investigations for counterfeit currency, to include: purchasing counterfeit currency with confidential informants and undercover agents, identity theft investigations, credit card fraud, and bank fraud in both state and federal courts in the Southern District of Texas. During my employment with ATF and with the USSS, I have assisted other agencies and law enforcement, including the Drug Enforcement Administration (DEA), with investigations regarding firearms and narcotics.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1111, Murder in Indian Country, 18 U.S.C. § 81, Arson within Special Maritime and Territorial Jurisdiction, 18 U.S.C. §1153, Offenses Committed in Indian Country, and 18 U.S.C. § 1151, Indian Country Defined, 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and 26 U.S.C. § 5861(d), Possession of an Unregistered Firearm have been committed by Kiah John PRITCHETT. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## **PROBABLE CAUSE**

6. **Criminal Actors**: The individuals who potentially engaged in criminal activity relevant to the requested search warrant are KIAH JOHN PRITCHETT (PRITCHETT) and BRADLEY DAVIS (DAVIS). PRITCHETT is an enrolled member of the Cherokee Nation, with

some degree of Indian blood. DAVIS is an enrolled member of the Cherokee Nation, with some degree of Indian blood.

7.      **Jurisdiction**: This Court is a court of competent jurisdiction to issue such orders as defined by 18 U.S.C. §§ 2711 and 3127. As a court of competent jurisdiction, this Court has the authority to order the disclosure of the Information sought in Attachments A and B, pursuant to 18 U.S.C. § 2703, and the specific probable cause set forth herein. The facts and circumstances alleged in this Affidavit occurred in Indian Country, within the Eastern District of Oklahoma.

8.      On July 5, 2021, deputies with the Cherokee County Sheriff's Office (CCSO) located a burned vehicle while searching for a missing person. CCSO deputies were looking for Braeden Collins (COLLINS), an 18-year-old male, who was last seen on July 4, 2021. COLLINS was last seen near where the burned vehicle was found. While inspecting the vehicle, deputies discovered a dead, burned body in the front passenger area of the vehicle.

9.      ATF assisted with a search of the burned vehicle. An ATF Accelerant Detection Canine was utilized in the search. The canine alerted to multiple areas of the vehicle where possible accelerants were present, and samples were taken for later examination in a laboratory. While the vehicle was being moved, a firearm fell from the underside of the vehicle. ATF examined the firearm and determined the firearm was a single shot bolt action rifle that had a barrel that was shortened.

10.     The Oklahoma State Medical Examiner (OSME) was able to positively identify the burned remains as those of COLLINS after comparing the remains' DNA to the DNA of COLLINS' mother.

11. During this investigation, CCSO deputies, ATF special agents, and I interviewed (1) TW; (2) Stormie Smith (SMITH), PRITCHETT's girlfriend; (3) Brandy CHITTY (CHITTY), PRITCHETT's ex-wife; (4) JD, TW's girlfriend; (5) Cody Pritchett; (6) Miranda Caviness; (7) CC; (8) LS, the last registered owner of the burned vehicle; (9) EC, LS's relative; (10) JQ, EC's son-in-law; (11) RP; and (12) Bradley Davis (DAVIS).

12. Resident Agent in Charge (RAC) Ashley Stephens was able to identify the Vehicle Identification Number (VIN) of the burned vehicle. Further investigation revealed the burned vehicle was recently sold to PRITCHETT, despite LS being the last registered owner of the vehicle. LS gave the vehicle to EC, who gave it to JQ. JQ sold the vehicle to JP, who sold it to DJ Kirk. Kirk sold the vehicle to PRITCHETT.

13. Through interviews with TW, JD, and SMITH, we learned that PRITCHETT had encountered COLLINS in the early morning hours of July 4, 2021, and that COLLINS was last seen alive with PRITCHETT outside of JD's residence. Approximately three hours after COLLINS was seen with PRITCHETT, PRITCHETT returned to JD's residence in wet and muddy clothes, with a bandage on his head that was not previously present. SMITH noted that upon PRITCHETT's return, he smelled of gasoline. JD recounted earlier seeing a gas can in the back of PRITCHETT's vehicle before he left with COLLINS.

14. When PRITCHETT returned to JD's residence on July 4, 2021, he was in the company of CHITTY and DAVIS, riding in a Dodge with a hatchback.

15. PRITCHETT gave inconsistent explanations to TW and SMITH for how he had come to be wearing wet, muddy clothes. PRITCHETT told TW he was ambushed by four men and was struck in the head with a pistol before walking to CHITTY's residence. PRITCHETT told SMITH he stopped for a vehicle in the middle of the road, and that when he did so, a person

4

got into the vehicle and held a gun to PRITCHETT's head. PRITCHETT told SMITH he was made to strip naked but fled after a firearm was discharged. TW gave PRITCHETT new clothes, and PRITCHETT washed the clothes he had been wearing.

16. CC told investigators that DAVIS said he had done something bad and described walking into a residence where an 8-year-old child was being molested. DAVIS said that together with PRITCHETT he tortured the molester with implements, including hoses and barbed wire. DAVIS said he later shot the molester in the head. DAVIS told a similar version of events to another individual.

17. According to TW, JD, and SMITH, PRITCHETT was in possession of firearms on July 4, 2021. TW remembered PRITCHETT had a shotgun and a "pirate gun". TW thought the "pirate gun" was a .22 caliber bolt action, with a shortened barrel and stock. JD told agents that PRITCHETT was in possession of a small pistol-type firearm. SMITH told agents that PRITCHETT had a short-barreled weapon, the length of an upper leg. SMITH also said the firearm was in PRITCHETT's vehicle when he left with COLLINS.

18. Cell phones were located in a burn pit associated with JD's residence later on July 4, 2021. TW believed the cell phones in the pit belonged to PRITCHETT.

19. On July 6, 2021, Agents interviewed CHITTY. CHITTY falsely claimed that she did not own a vehicle. She initially claimed that she had not seen PRITCHETT early in the morning on July 4, 2021 and denied picking him up and giving him a ride. CHITTY changed her story during the interview and said that together with DAVIS, she had picked PRITCHETT up at "Tristan's" residence. She described Tristan as a friend of her son. I later learned this location is the residence of Joyce Crossno and is near the location where the burned vehicle and body were found.

20. On July 9, 2021, agents interviewed DAVIS. DAVIS admitted that he had claimed to have tortured and murdered a person but said these claims were not true. DAVIS asserted he said those things to scare people into helping him get out of town. DAVIS then said he helped pick PRITCHETT up near Roy Sparks' residence on July 4, 2021. Sparks' residence is near the burned vehicle and body. DAVIS said that PRITCHETT was soaking wet and claimed that he had been robbed. PRITCHETT asked DAVIS to pick up a tub of clothes PRITCHETT had left near Kim Sparks' residence. DAVIS said PRITCHETT later told him that he had beaten COLLINS to death. DAVIS told investigators that PRITCHETT often carried a .22 caliber firearm that was short enough to fit in the front of his pants.

21. During the investigation, I examined the firearm collected from the burned vehicle, and identified it as a Remington, Model 514, .22 caliber rifle, with no visible serial number, and a shortened barrel. Based on my training and experience, I believe the firearm collected from the burned vehicle could match the witnesses' descriptions of the firearm often carried by PRITCHETT.

22. On July 13, 2021, SA Withem and I again interviewed CHITTY. She told us that the 2008 white Dodge Caliber used to pick up PRITCHETT on July 4, 2021 was hers. She admitted that she was with DAVIS during the evening hours of July 3, 2021 into the early morning hours of July 4, 2021. CHITTY said that shortly after midnight on July 4, 2021, PRITCHETT called her and asked for a ride. She refused, but PRITCHETT contacted DAVIS, who agreed to pick PRITCHETT up. DAVIS drove CHITTY's vehicle to Joyce Crossno's (Crossno) residence, while CHITTY rode in the passenger seat. Crossno's residence is near where PRITCHETT's burned vehicle and the body were found.

23. CHITTY said that PRITCHETT called from B.P.'s, phone, who was staying at Crossno's residence that night. B.P. is the son of both PRITCHETT and CHITTY. I later learned that B.P.'s cellular telephone number is 918-316-6390.

24. CHITTY said that PRITCHETT came from inside the residence and entered the vehicle through the driver's-side rear door. DAVIS then drove them to 15873 W. 813 Road, Tahlequah, Oklahoma, which is JD's residence.

25. At this time, B.P.'s cellular telephone has not been recovered by law enforcement. Based on the information received from DAVIS and CHITTY, PRITCHETT used B.P.'s cell phone to access Facebook and Messenger to make a phone call to DAVIS. As a result, Cellco Partnership DBA Verizon Wireless should have information that will assist investigators in determining where B.P.'s cellular phone was at the time of COLLINS' homicide and during the hours afterwards.

26. In the execution of my duties and responsibilities, I have learned that Cellco Partnership DBA Verizon Wireless is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate

location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

27. Based on my training and experience, I know that Cellco Partnership DBA Verizon Wireless can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Cellco Partnership DBA Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Additionally, Cellco Partnership DBA Verizon Wireless collects historical mobile location information, commonly known as NELOS, which can provide location information for the specific device in question.

28. Based on my training and experience, I know that wireless providers such as Cellco Partnership DBA Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Cellco Partnership DBA Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

29.Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

30.I further request that the Court direct Cellco Partnership DBA Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Cellco Partnership DBA Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Lucas Keck*

Lucas Keck
Special Agent
ATF

Subscribed and sworn to before me on __12__ day of August, 2021

_____
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 918-316-6390, ("the Account"), that are stored at premises controlled by Cellco Partnership DBA Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

# ATTACHMENT B

## Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **00:01 July 3, 2021** through **23:59 July 5th, 2021.**

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received

      iii. Historical Mobile Location Information commonly known as NELOS data and relevant GPS coordinates of the device during aforementioned time range.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 18 U.S.C. § 1111, Murder in Indian Country, 18 U.S.C. § 81, Arson within Special Maritime and Territorial Jurisdiction, 18 U.S.C. §1153, Offenses Committed in Indian Country, and 18 U.S.C. § 1151, Indian Country Defined, 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and 26 U.S.C. § 5861(d), Possession of an Unregistered Firearm have been committed by Kiah John PRITCHETT during the period **00:01 July 3, 2021** through **23:59 July 5th, 2021.**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Cellco Partnership DBA Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Cellco Partnership DBA Verizon Wireless. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Cellco Partnership DBA Verizon Wireless, and they were made by Cellco Partnership DBA Verizon Wireless as a regular practice; and

b. such records were generated by Cellco Partnership DBA Verizon Wireless' electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Cellco Partnership DBA Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Cellco Partnership DBA Verizon Wireless and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                              Signature